R. Mark Keenan
mkeenan@andersonkill.com
Dennis J. Artese
dartese@andersonkill.com
Kathleen F. Donovan
kdonovan@andersonkill.com
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Attorneys For Defendant
Andrew Kahnke

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANUS ET CIE,<br><br>                                  Plaintiff,<br><br>   v.<br><br>ANDREW KAHNKE,<br><br>                                  Defendant. | Civil Action No. 12-CIV-7201-WHP |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT ANDREW KAHNKE'S MOTION TO DISMISS</u>**

nydocs1-999331.9

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| PRELIMINARY STATEMENT | | | 1 |
| STATEMENT OF FACTS | | | 3 |
| APPLICABLE STANDARD OF REVIEW | | | 4 |
| ARGUMENT | | | 5 |
| I. | JANUS' CLAIM FAILS UNDER CALIFORNIA LAW | | 5 |
| II. | THE COMPLAINT DOES NOT STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW | | 6 |
| III. | NEW YORK COURTS DO NOT RECOGNIZE A CLAIM FOR "INEVITABLE DISCLOSURE" OF TRADE SECRETS | | 7 |
| | A. | The "Inevitable Disclosure" Theory Has Been Considered Only in Connection with Motions for Preliminary Injunctions and Then Applied Only in Two Situations Not Applicable Here | 8 |
| | | 1. Public Policy Limits Application of the "Inevitable Disclosure" Theory | 9 |
| | B. | The "Inevitable Disclosure" Theory Has Only Been Applied in the Context of a Preliminary Injunction, Relief Which Is Markedly Different Than Janus' Requested Relief | 11 |
| CONCLUSION | | | 14 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................. 4

*Boston Laser, Inc. v. Qinxin Zu*,
 No. 3:07-CV-0791T, 2007 WL 2973663 (N.D.N.Y. Sept. 21, 2007) ................................. 8, 12

*Camarillo v. Carrols Corp.*,
 518 F.3d 153 (2d Cir. 2008) ..................................................................................................... 5

*Colonize.Com, Inc. v. Perlow*,
 No. 03-CV-466, 2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) ............................................. 8

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
 No. 11-CV-6337(ADS)(GRB), 2012 WL 4470423 (E.D.N.Y. Sept. 27, 2012) ...................... 6

*DoubleClick, Inc. v. Henderson*,
 No. 116914/97, 1997 WL 731413 (N.Y. Sup. Ct. Nov. 7, 1997) ............................................. 9

*EarthWeb, Inc. v. Schlack*,
 71 F. Supp. 2d 299 (S.D.N.Y. 1999) ................................................................................ passim

*First Empire Securities, Inc. v. Miele*,
 2007 WL 2894245, 851 N.Y.S.2d 57 (N.Y. Sup. Ct. 2007) ............................................... 7, 11

*FLIR Sys., Inc. v. Parrish*,
 95 Cal. Rptr. 3d 307 (Ct. App. 2009) ....................................................................................... 6

*Geldzahler v. N.Y. Med. Coll.*,
 663 F. Supp. 2d 379 (S.D.N.Y. 2000) ...................................................................................... 5

*Global Telesystems, Inc. v. KPNQwest, N.V.*,
 151 F. Supp. 2d 478 (S.D.N.Y. 2001) ...................................................................................... 9

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
 62 F.3d 69 (2d Cir. 1995) ......................................................................................................... 5

*Int'l Bus. Machs. Corp. v. Papermaster*,
 No. 08-CV-9078 (KMK), 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ........................ 12, 13

*JTH Tax, Inc. v. Gouneh*,
 721 F. Supp. 2d 132 (N.D.N.Y. 2010) ..................................................................................... 5

*Marietta Corp. v. Fairhurst*,
 754 N.Y.S.2d 62 (N.Y. App. Div. 2003) .............................................................................. 7, 8

## TABLE OF AUTHORITIES

**Page(s)**

*Pellerin v. Honeywell Int'l, Inc.*,
   No. 11-CV-01278, 2012 WL 2781346 (S.D. Cal. July 6, 2012) .............................................. 5

*Penrose Computer Marketgroup, Inc. v. Camin*,
   682 F. Supp. 2d 202 (N.D.N.Y. 2010) .................................................................................. 6, 7

*Ritani, LLC v. Aghjayan*,
   No. 11 CIV. 8928, 2012 WL 2979058 (S.D.N.Y. July 20, 2012) ......................................... 6, 7

*Rodriguez ex rel. Rodriguez v. DeBuono*,
   175 F.3d 227 (2d Cir. 1999) .................................................................................................... 12

*Sichel v. UNUM Provident Corp.*,
   230 F. Supp. 2d 325 (S.D.N.Y. 2002) ..................................................................................... 4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 4

## INTRODUCTION

Defendant, Andrew Kahnke, through his attorneys, Anderson Kill & Olick, P.C., respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Complaint in the above-referenced action.

## PRELIMINARY STATEMENT

In this case, plaintiff JANUS et Cie ("Janus" or "Plaintiff") seeks an injunction, permanently preventing Mr. Kahnke from working for an alleged competitor, Dedon, Inc. ("Dedon"). Janus seeks this injunction despite the fact that Janus did not negotiate for or enter into a non-compete agreement with Mr. Kahnke, and its Complaint does not allege any disclosure of trade secrets by Mr. Kahnke or any other wrongdoing for that matter. Instead, Janus seeks to restrict Mr. Kahnke's right to work on the theory that Mr. Kahnke will inevitably disclose Janus' purported trade secrets. Counsel for Janus candidly admitted at the November 16, 2012 pre-motion conference before Your Honor that Janus' goal is to take discovery of Dedon in the hopes of finding some evidence of wrongdoing – a blatant fishing expedition. Thus, it is not surprising that Janus' "claim" for "inevitable disclosure" of trade secrets is not recognized under any potentially applicable law and, therefore, should be dismissed.

When Mr. Kahnke joined Janus, he signed a "Confidentiality Proprietary Information and Non-Disclosure Agreement" (the "Non-Disclosure Agreement"). Compl. ¶ 12.[1] Pursuant to its choice of law provision, the Non-Disclosure Agreement is governed by California law. *Id.* at Exhibit A, ¶ 19. The Non-Disclosure Agreement contains the terms that Janus believed governed the parties' employment relationship. Yet Janus admits that "the claim alleged [in this lawsuit] is not for breach of any contract and is not based on the non-disclosure agreement."[2] Janus did not bring a cause of action for breach of the Non-Disclosure Agreement because (1) it has not

---

[1] A copy of the Non-Disclosure Agreement is attached as Exhibit A to Plaintiff's Complaint.

[2] October 23, 2012 Pre-Motion Response Letter from Counsel for Janus to the Hon. William H. Pauley III.

alleged and cannot allege that Mr. Kahnke actually disclosed Janus' purported trade secrets and confidential information, and (2) California law unequivocally rejects the "inevitable disclosure" doctrine for all purposes.

Recognizing this road block, Janus instead attempts to couch its claim as one for misappropriation of trade secrets based on a theory of "inevitable disclosure" under New York law. Compl. ¶¶ 25-29. Similar to California law, however, "inevitable disclosure" of trade secrets has not been accepted by New York state courts as an independent cause of action. In New York, the doctrine has been considered only in connection with motions for preliminary injunctions (temporary relief) and, in that context, has been applied only under two circumstances not applicable here: (1) where the parties have executed a non-compete agreement, and (2) where there are allegations and evidence of actual misappropriation of trade secrets or other wrongdoing. New York has a strong public policy against restrictive covenants not to compete and thus firmly rejects the "inevitable disclosure" doctrine – except in the limited above-listed circumstances – because New York recognizes that application of the doctrine effectively results in the formation of a non-compete agreement where none was bargained for. Here, Janus has not sought any preliminary injunction, has not alleged the breach of any contract between the parties, and has not alleged that Mr. Kahnke has actually engaged in any wrongdoing whatsoever.

Accordingly, Janus' disingenuous attempt to create a *de facto* non-compete agreement, under the baseless theory of "inevitable disclosure" of trade secrets, fails under both California and New York law, and its Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[3]

Mr. Kahnke was employed by Janus for approximately four and a half years. Compl. ¶¶ 7, 13. For the first three years of Mr. Kahnke's employment, he was a Sales Associate for Janus' New York showroom, and for the last year and a half, he worked as a Sales Manager for the Washington D.C. showroom. *Id.* at ¶ 7. When Mr. Kahnke joined Janus, he signed a "Confidentiality Proprietary Information and Non-Disclosure Agreement" (the "Non-Disclosure Agreement"). Compl. ¶ 12.[4] Pursuant to its choice of law provision, the Non-Disclosure Agreement is governed by California law. *Id.* at Exhibit A, ¶ 19. Janus does not allege the existence of any non-compete agreement between the parties. *See generally* Compl.

Janus alleges that, while in its employ, Mr. Kahnke had access to purported trade secrets and confidential information, "including but not limited to, directly developing and customizing for JANUS the Servoy system and other resource documents which detail key points about customers and competitors, financial, marketing and new product information, selling reports, order processing, product flow, inventory management, logistics, historical customer information and customized management systems." Compl. ¶ 8. Janus also alleges that Mr. Kahnke supervised and trained other employees on how to use the Servoy system. *Id.* at ¶ 9.

Mr. Kahnke resigned from Janus and accepted employment with Dedon in August 2012. Janus assumes that Mr. Kahnke's job responsibilities at Dedon are "nearly identical" to those he had at Janus. *Id.* at ¶ 18. Janus also speculates that Mr. Kahnke was hired by Dedon to exploit Janus' confidential information and trade secrets and to develop an account management system such as Servoy, which Janus assumes Dedon does not already have. *Id.* at ¶¶ 20-21. Based on this

---

[3] Many of the "facts" set forth in this section are taken from the allegations in Janus' Complaint (Dkt. No. 1), which the Court accepts as true for purposes of deciding the instant Motion to Dismiss. Mr. Kahnke's recitation of Janus' allegations herein does not constitute an admission of the truth of any allegation, and Mr. Kahnke reserves his right to deny all such allegations.

[4] A copy of the Non-Disclosure Agreement is attached as Exhibit A to Plaintiff's Complaint.

3

nydocs1-999331.9

rank speculation, Janus concludes that "it is inevitable that [Mr.] Kahnke will necessarily disclose and use JANUS' valuable confidential business information and trade secrets in his new position for the benefit of his new employer." *Id.* at ¶ 22.[5]

On September 24, 2012, Janus filed the instant action, seeking (1) a permanent injunction to prevent Mr. Kahnke from working for Janus; (2) a permanent injunction to prevent Mr. Kahnke from disclosing trade secrets and confidential information; (3) a judgment for money damages; and (4) a judgment for punitive and exemplary damages. *Id.* at p. 6. Notably, Janus did not bring an action for breach of the Non-Disclosure Agreement. *See generally* Compl. In fact, Janus does not allege that Mr. Kahnke actually has disclosed confidential information or trade secrets to Mr. Kahnke's new employer, Dedon, or to any other party. *Id.* Nor does Janus allege any other actual wrongdoing by Mr. Kahnke. *Id.* Instead, Janus' only "claim" against Mr. Kahnke is for "inevitable disclosure" of trade secrets. *Id.* at ¶¶ 25-29.

## APPLICABLE STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to file a motion to dismiss for failure to state a claim upon which relief can be granted prior to filing a responsive pleading. F.R.C.P. 12(b)(6). "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint.'" *Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 327 (S.D.N.Y. 2002) (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he plaintiff must provide the

---

[5] While not relevant to a determination of the instant Motion, Servoy is publicly available. http://www.servoy.com/. Mr. Kahnke has no programming experience and did not play any role in developing Servoy. Dedon uses a completely different publicly available CRM system called Sugar (http://www.sugarcrm.com/), which it implemented over a year ago. Mr. Kahnke is not responsible for CRM development at Dedon, and has no training responsibilities at Dedon, except for the training of new hires in the New York showroom where he is based.

4

grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Dismissal is appropriate "if the complaint lacks an allegation regarding an element necessary to obtain relief . . . ." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 386 (S.D.N.Y. 2000). In addition to consideration of the facts in the complaint, the court may consider any documents attached as exhibits to the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *JTH Tax, Inc. v. Gouneh*, 721 F. Supp. 2d 132, 136 (N.D.N.Y. 2010) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)).

As set forth below, the Complaint fails to state a claim upon which relief can be granted because there is no recognized cause of action for "inevitable disclosure" of trade secrets under New York or California law. Consequently, Mr. Kahnke's Motion to Dismiss the Complaint should be granted.

## ARGUMENT

### I. JANUS' CLAIM FAILS UNDER CALIFORNIA LAW

The Non-Disclosure Agreement negotiated and executed by the parties governs the relationship between Janus and Mr. Kahnke. Compl., Exhibit A. Janus, a California corporation with its principal place of business in California, chose that California law would apply to disputes arising out of that relationship. Compl. ¶ 2. California law rejects the theory of "inevitable disclosure" of trade secrets for all purposes. *Pellerin v. Honeywell Int'l, Inc.*, No. 11-CV-01278, 2012 WL 2781346, at *3 (S.D. Cal. July 6, 2012) ("California does not recognize the 'inevitable disclosure doctrine,' which means that a party cannot prove trade secret misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former employer's trade secrets."). In fact, because California law so clearly rejects the theory, California courts have imposed sanctions on plaintiffs bringing misappropriation claims

5

based on a theory of "inevitable disclosure." *FLIR Sys., Inc. v. Parrish*, 95 Cal. Rptr. 3d 307, 314 (Ct. App. 2009).

Implicitly recognizing this insurmountable hurdle, in its October 23, 2012 letter to the Court opposing Mr. Kahnke's request for a pre-motion conference, Janus maintained that "the claim alleged is not for breach of any contract and is not based on the non-disclosure agreement," and that "New York law applies to [its] misappropriation claim." In an effort to avoid clear California law against it, Janus invents a non-existent cause of action in New York, and argues for the application of New York law. Even assuming New York law applies to this action, dismissal of Janus' complaint is required.

## II. THE COMPLAINT DOES NOT STATE A CLAIM FOR MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW

Under settled New York law, "[t]o state a claim for misappropriation of a trade secret or confidential information, a plaintiff must show: '(1) that it possessed a trade secret [or confidential information], and (2) that the defendants used that trade secret [or confidential information] in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'" *Dorset Indus., Inc. v. Unified Grocers, Inc.*, No. 11-CV-6337(ADS)(GRB), 2012 WL 4470423, at *13 (E.D.N.Y. Sept. 27, 2012) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (emphasis added)); *see also Ritani, LLC v. Aghjayan*, No. 11 CIV. 8928, 2012 WL 2979058, at *20 (S.D.N.Y. July 20, 2012) ("To recover under New York law, a plaintiff must show that it possessed a trade secret and that defendants used the trade secret in breach of an agreement, confidential relationship or duty or by improper means of discovery."); *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 213 (N.D.N.Y. 2010). Where a complaint does not contain such allegations, it must be dismissed. *Ritani, LLC*, 2012 WL 2979058, at *20.

6

Janus has not and cannot allege that Mr. Kahnke has actually used or disclosed any of Janus' purported trade secrets. *See generally* Compl. Because use of a trade secret is an essential element to a cause of action for trade secret misappropriation, Janus' Complaint fails to state a claim for trade secret misappropriation and must be dismissed. *Ritani, LLC*, 2012 WL 2979058, at *20 (dismissing a claim for misappropriation of trade secrets against certain defendants where plaintiff "fail[ed] to set forth any allegations as to the use of the alleged trade secrets.... [T]he wrongdoing ... must be delineated and therefore the motion to dismiss the misappropriation of trade secret claim is granted."); *cf. Penrose*, 682 F. Supp. 2d at 214 (denying motion to dismiss where plaintiff alleged that defendant learned "confidential information through his employment and then used that information to compete against" the plaintiff) (emphasis added).

## III.   NEW YORK COURTS DO NOT RECOGNIZE A CLAIM FOR "INEVITABLE DISCLOSURE" OF TRADE SECRETS

Recognizing that it cannot state a claim for misappropriation of trade secrets, Janus attempts to frame its "claim" as one for "inevitable disclosure of trade secrets." However, the "inevitable disclosure" theory has "not yet [been] adopted by the state courts" of New York. *Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62, 65 (N.Y. App. Div. 2003); *see also First Empire Securities, Inc. v. Miele*, 2007 WL 2894245, at *5, 851 N.Y.S.2d 57 (N.Y. Sup. Ct. 2007) ("At the present time New York does not recognize the doctrine of 'inevitable disclosure' of confidential or proprietary information to support the issuance of a preliminary injunction."). The reason is clear. Where the parties simply execute a confidentiality agreement, application of the theory would permit "the parties' confidentiality agreement [to] be wielded as a restrictive covenant. . . . This can be a powerful weapon in the hands of an employer; the risk of litigation alone may have a chilling effect on the employee. Such constraints should be the product of open negotiation." *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310 (S.D.N.Y. 1999) (J. Pauley) (emphasis added). As such, the theory "treads an exceedingly narrow path through judicially disfavored territory." *Id.*

7

nydocs1-999331.9

For that reason, in *Marietta Corp. v. Fairhurst*, the Third Department overturned the supreme court's grant of a preliminary injunction enjoining Marietta Corp.'s former vice president from accepting new employment. 754 N.Y.S.2d at 65. As here, Marietta Corp. and Fairhurst had not executed a non-compete agreement, and Fairhurst had not disclosed any of Marietta Corp.'s trade secrets or confidential information. *Id.* Instead, there was "a valid and enforceable confidentiality agreement which clearly anticipated that [Fairhurst] may change his employment during its duration after acquiring [Marietta Corp.'s] confidential information." *Id.* at 66. Under such circumstances, and after declaring that the "inevitable disclosure" theory had "not yet [been] adopted by the state courts" of New York, the Third Department held that Marietta Corp. was not entitled to a preliminary injunction. *Id.* at 65.

### A. The "Inevitable Disclosure" Theory Has Been Considered Only in Connection with Motions for Preliminary Injunctions and Then Applied Only in Two Situations Not Applicable Here

New York courts have considered the "inevitable disclosure" theory only in connection with motions for preliminary injunctions, and, in that context, have applied the doctrine only under two circumstances not applicable here: (1) where the parties have executed a non-compete agreement, and (2) where there are allegations and evidence of actual misappropriation of trade secrets or other wrongdoing. *See, e.g., Marietta Corp.*, 754 N.Y.S.2d at 65-66 ("As no restrictive covenant was in existence here and our well entrenched state public policy considerations disfavor such agreements, the doctrine of inevitable disclosure is disfavored as well, '[a]bsent evidence of actual misappropriation by an employee.'" (quoting *EarthWeb*, 71 F. Supp. 2d at 310)); *Boston Laser, Inc. v. Qinxin Zu*, No. 3:07-CV-0791T (TJM/DEP), 2007 WL 2973663, at *9 n.12 (N.D.N.Y. Sept. 21, 2007) ("[F]ederal courts also have exemplified a reluctance to use the doctrine to grant injunctive relief, and have applied the doctrine only where evidence of actual misappropriation of trade secrets exists."); *Colonize.Com, Inc. v. Perlow*, No. 03-CV-466, 2003 WL 24256576, at *6 (N.D.N.Y. Oct. 23, 2003) ("New York courts have used the doctrine very sparingly

8

to grant injunctive relief only in circumstances where other evidence of theft of trade secrets exists.... Absent any wrongdoing that would constitute a breach under the non-compete agreement, mere knowledge of the intricacies of a business is simply not enough."); *see also DoubleClick, Inc. v. Henderson*, No. 116914/97, 1997 WL 731413, at *1 (N.Y. Sup. Ct. Nov. 7, 1997) (granting preliminary injunction because there were allegations and evidence of actual misappropriation, including the copying of employer's confidential information) and *Global Telesystems, Inc. v. KPNQwest, N.V.*, 151 F. Supp. 2d 478 (S.D.N.Y. 2001) (granting preliminary injunction in favor of company that sued its competitor under contract not to solicit or hire each other's employees).

Even assuming the inevitable disclosure doctrine could be considered outside the context of a motion for preliminary injunction (a wholly unsupported proposition under New York law), because Janus has not alleged either of the special circumstances identified above, it has failed to state a recognized claim under New York law, and its Complaint should be dismissed in its entirety. Indeed, Janus cannot point to a single New York state or federal court decision that sanctions the use of the inevitable disclosure doctrine in the manner in which Janus seeks to use it here. If this Court were to allow Janus' action to proceed, it would constitute the first decision under New York law recognizing an employer's right to enjoin a former employee's right to work, <u>without the existence of a pre-negotiated non-compete agreement and without any evidence of wrongdoing</u>. Such a decision also would permit the employer to engage in a blatant fishing expedition in the hopes finding some evidence of wrongdoing to support an otherwise recognized claim for trade secret misappropriation. Such a result would be directly contrary to the sound public policies of New York State.

### 1. Public Policy Limits Application of the "Inevitable Disclosure" Theory

New York's restriction of the "inevitable disclosure" theory to cases where a non-compete agreement exists or where there has been actual wrongdoing is sound. Breach of a non-compete agreement and actual trade secret misappropriation are both recognized causes of action in

9

New York. To apply a theory of "inevitable disclosure" to permanently enjoin employment where these circumstances are not present would improperly punish a former employee who has committed no wrong. Moreover, institution of a permanent injunction where a non-compete agreement does not exist would inappropriately impose an overly restrictive covenant not to compete where the employer did not bargain for such a contract and for which the employee received no consideration.

*EarthWeb*, decided by Your Honor and one of the more frequently cited cases on the "inevitable disclosure" theory, is instructive as to why New York courts disfavor application of the "inevitable disclosure" theory absent these special circumstances. There, EarthWeb sought to enjoin its former vice president from commencing employment with a competitor. *EarthWeb*, 71 F. Supp. 2d at 302. While there was no evidence of actual misappropriation, there was a non-compete agreement. *Id.* at 308. The vice president's Employment Agreement contained promises not to disclose confidential information or work for a competitor for twelve months. *Id.* at 307. Because there was a non-compete agreement in place, this Court was able to avoid the public policy concerns that prevent application of the "inevitable disclosure" theory where no such agreement exists. *Id.* at 310. As Your Honor explained, "in cases that do not involve the actual theft of trade secrets, the court is essentially asked to bind the employee to an implied-in-fact restrictive covenant based on a finding of inevitable disclosure. This runs counter to New York's strong public policy against such agreements and circumvents the strict judicial scrutiny they have traditionally required." *Id.* Ultimately, this Court "decline[d] to rewrite the parties' employment agreement under the rubric of 'inevitable disclosure' and thereby permit EarthWeb to broaden the sweep of its restrictive covenant." *Id.* at 311.

Janus has not alleged that the parties executed a non-compete agreement or that Mr. Kahnke has engaged in any wrongdoing. *See generally* Compl. The only agreement between the parties is the Non-Disclosure Agreement, which does not restrict Mr. Kahnke's right to work for

10

any company. *See* Compl., Exhibit A. Moreover, Janus has not alleged and cannot allege that Mr. Kahnke has disclosed its purported trade secrets to Dedon or any other party. As such, Janus has not sufficiently stated a cause of action for trade secret misappropriation, and its reliance on the "inevitable disclosure" doctrine is misplaced. If this Court were to hold otherwise, it would create new law in New York allowing for *de facto* non-compete agreements where none was bargained for and would permit employers to engage in fishing expeditions into their competitors' (non-parties) records.

### B. The "Inevitable Disclosure" Theory Has Only Been Applied in the Context of a Preliminary Injunction, Relief Which Is Markedly Different Than Janus' Requested Relief

In all of the cases applying the "inevitable disclosure" theory, including those previously relied upon by Janus in its pre-motion letter, the court has done so on a motion for preliminary injunction.[6] This distinction is crucial because, whereas a preliminary injunction provides <u>temporary</u> relief to a party while the litigation of the party's claims is pending, Janus seeks a <u>permanent</u> injunction preventing Mr. Kahnke from working for Dedon, forever. Significantly, on occasion New York courts have permitted the use of the "inevitable disclosure" as a theory to support a finding of irreparable harm, but have not sanctioned the use of the doctrine as an independent cause of action.[7] The courts assess whether the potential for "inevitable disclosure" will irreparably harm the plaintiff during the pendency of the prosecution of the plaintiff's properly stated causes of action, *i.e.*, actual misappropriation of trade secrets or breach of a non-competition agreement.

---

[6] At least one New York court as held that "New York does not recognize the doctrine of 'inevitable disclosure' of confidential or proprietary information to support the issuance of a preliminary injunction." *First Empire Securities, Inc. v. Miele*, 2007 WL 2894245, at *5, 851 N.Y.S.2d 57 (Sup. Ct. 2007).

[7] As explained above, use of the "inevitable disclosure" theory in the context of preliminary injunctions has been limited to instances where a claim for breach of a non-compete agreement has been asserted or evidence of actual wrongdoing exists.

11

"The primary function to be served by the issuance of a preliminary injunction is the avoidance of an injury or harm for which damages cannot adequately compensate the moving party." *Boston Laser, Inc.*, 2007 WL 2973663, at *9 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). In order to show that it is entitled to such relief, the movant bears the burden to establish that it (1) would suffer irreparable harm or injury without such relief, and (2) either a likelihood of success on the merits or sufficient questions going to the merits to warrant litigation and a balance of hardships in favor of the movant. *Id.* (citing *Computer Assocs. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 986 (E.D.N.Y. 1992)).

"[T]he lynchpin factor in the preliminary injunction calculus is the issue of irreparable harm; since the issuance of a preliminary injunction represents extraordinary relief, awarded before full litigation of an action on its merits, it should be granted only in the event that the moving party establishes that if interim relief is not granted, it will suffer irreparable harm which cannot adequately be addressed by invoking legal remedies." *Boston Laser, Inc.*, 2007 WL 2973663, at *9 (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)). "[T]he harm must be so imminent as to be irreparable if a court waits until the end of trial to resolve the harm." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999).

It is under an analysis of the first factor, irreparable harm, that the "inevitable disclosure" theory comes into play. For example, in *EarthWeb*, this Court found that "[i]t is also possible to establish irreparable harm based on the inevitable disclosure of trade secrets." *EarthWeb, Inc.*, 71 F. Supp. 2d at 309; *see also Boston Laser, Inc.*, 2007 WL 2973663, at *9 n.12 ("[The inevitable disclosure] doctrine, however, is disfavored in New York as a basis for an irreparable harm finding, based primarily on this State's strong public policy against restrictive non-competition agreements."). Similarly, in *International Business Machines. Corp.*, previously relied upon by Janus in its pre-motion letter, the court assessed the "inevitable disclosure" theory in connection with its determination of irreparable harm, finding that "the likely inevitability of even

12

inadvertent disclosure is sufficient to establish a real risk of irreparable harm." *Int'l Bus. Machs. Corp. v. Papermaster*, No. 08-CV-9078 (KMK), 2008 WL 4974508, at *10 (S.D.N.Y. Nov. 21, 2008). When the court looked to the requirement of likelihood of success on the merits, on the other hand, it centered its analysis on the plaintiff's likelihood of success on its claim for breach of the subject noncompetition agreement. *Id.* at *11-12.

The cases make clear that, to the extent New York sanctions the use of the "inevitable disclosure" doctrine for any purpose, it limits such use to support a finding of irreparable harm for a preliminary injunction in cases involving an otherwise properly stated cause of action for breach of a noncompetition agreement or misappropriation of trade secrets (where evidence of wrongdoing exists). Unlike the permanent and limitless injunction sought by Janus, these courts have addressed "inevitable disclosure" in the context of temporary, preliminary injunctive relief during the pendency of the plaintiff's litigation over its misappropriation or breach of contract claims. Even in the context of a motion for a preliminary injunction, New York law rejects the doctrine where a non-compete covenant is not alleged to have been breached or where there is no evidence of any actual wrongdoing. The "inevitable disclosure" theory has not been and should not be applied as a stand-alone cause of action in New York, particularly where, as here, there is no non-compete agreement between the parties and there are no allegations of wrongdoing. Accordingly, Janus' Complaint fails to state a cause of action and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated:  New York, New York
        November 30, 2012

                                              **ANDERSON KILL & OLICK, P.C.**

                                              By: *s/ Dennis J. Artese*
                                                   R. Mark Keenan
                                                   Dennis J. Artese
                                                   Kathleen F. Donovan
                                                   1251 Avenue of the Americas
                                                   New York, NY 10020
                                                   Tel: (212) 278-1000
                                                   Fax: (212) 278-1733

                                                   *Attorneys for Defendant*
                                                   *Andrew Kahnke*