UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

JANUS ET CIE,

                                  **Plaintiff,**

                -against-

ANDREW KAHNKE,

                                 **Defendant.**

                                 Case No. 12 CV 7201 (WHP)

--------------------------------------------------------------------

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

**KANE KESSLER P.C.**
*Attorneys for Plaintiff*
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

APPLICABLE PLEADING STANDARD.................................................................................. 2

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................ 6

I. PLAINTIFF HAS PROPERLY SET FORTH A CLAIM FOR RELIEF
UNDER THE INEVITABLE DISCLOSURE DOCTRINE ...................................................... 6

    A.    Plaintiff's Pleading is Sufficient .................................................................... 6
    B.    JANUS' Claim Is Governed By New York Law ............................................ 8
    C.    JANUS Need Not Plead That Kahnke Already Disclosed a Trade Secret...................... 9

II. THE INEVITABLE DISCLOSURE DOCTRINE
IS RECOGNIZED IN NEW YORK.......................................................................................... 11

    A.    Application of the Doctrine in New York.................................................... 11
    B.    The Doctrine May Be Applied To A Permanent Injunction ........................ 12
    C.    The Doctrine Protects Against Inevitable Tortious Conduct ........................ 14

CONCLUSION......................................................................................................................... 16

i

#361293.6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ayco Co., L.P. v. Frisch,
  795 F.Supp.2d 193 (N.D.N.Y. 2011) ........................................................................................9

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ..........................................................................................................2, 8

Boston Laser, Inc. v. Qinxin Zu,
  2007 WL 2973663 (N.D.N.Y. Sept. 21, 2007) .......................................................................13

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007).........................................................................................................2, 8

Colonize.Com, Inc. v. Perlow,
  2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) .......................................................................13

Doubleclick, Inc. v. Henderson,
  1997 WL 731413 (Sup. Ct. N.Y. Co. Nov. 7, 1997) ...............................................................11

Earthweb, Inc. v. Schlack,
  71 F. Supp.2d 299 (S.D.N.Y. 1999)................................................................................. *passim*

Finance One Public Co, Ltd. v. Lehman Bros. Special Financing, Inc.,
  414 F.3d 325 (2d Cir. 2005).................................................................................................8

Global Telesystems, Inc. v. KPNQwest, N.V.,
  151 F.Supp.2d 478 (S.D.N.Y. 2001)......................................................................................11

Gucci Am., Inc. v. Duty Free Apparel, Ltd.,
  286 F.Supp.2d 284 (S.D.N.Y.2003).......................................................................................12

IKON Office Solutions, Inc. v. Usherwood Office Technology, Inc.,
  21 Misc.3d 1144(A), 875 N.Y.S.2d 820 (N.Y. Sup Ct, Albany Co. 2008) .......................10, 11

Int'l Business Machines  Corp. v. Papermaster,
  2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008).................................................................7, 9, 11

PepsiCo, Inc. v. Redmond,
  54 F.3d 1262 (7th Cir. 1995) .......................................................................................10, 14, 15

#361293.6

Phillip Morris USA, Inc. v. A&V Minimarket, Inc.,
    592 F.Supp.2d 669 (S.D.N.Y. 2009)......................................................................12

Prot. One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC,
    553 F.Supp.2d 201 (E.D.N.Y.2008) .....................................................................12

Rescuecom Corp. v. Google, Inc.,
    562 F.3d 123 (2d Cir. 2009) ....................................................................................2

**Rule**

Fed.R.Civ. Proc. 12 (b)(6) ..............................................................................................1

#361293.6

## PRELIMINARY STATEMENT

Plaintiff JANUS et Cie ("JANUS") respectfully submits this Memorandum of Law in opposition to the motion to dismiss of defendant Andrew Kahnke ("Kahnke").  The Complaint properly asserts a claim under the inevitable disclosure doctrine – all of the elements of the doctrine have been alleged and, taking all of the facts alleged as true, the pleading should not be dismissed as a matter of law.  Whether Plaintiff will be able to prove its allegations is an issue that is simply not proper for determination on a motion under Fed. R. Civ. Proc. 12(b)(6).

The foundation for Kahnke's motion to dismiss rests on several shaky propositions.  The most glaring example is that Kahnke provides no authority whatsoever for his erroneous contention that the inevitable disclosure doctrine can only be asserted in the context of a preliminary injunction motion, not a permanent injunction as JANUS seeks here.  Kahnke goes on to contradict himself by pronouncing that the inevitable disclosure doctrine is not recognized in New York, yet admitting almost in the same breath that the doctrine has been applied in New York under narrow circumstances.  His assertion that the doctrine has been applied in only two circumstances, namely: "(1) where the parties have executed a non-compete agreement, and (2) where there are allegations and evidence of actual misappropriation of trade secrets or actual wrongdoing" (Kahnke Memorandum at 2) is wrong on both counts.  First, this Court has held that the inevitable disclosure doctrine will not be applied to expand a negotiated non-compete agreement – so that where there exists a non-compete, the doctrine will not be applied, but it will be applied in the absence of a non-compete (and was adopted by the Seventh Circuit in such a situation) to protect the employer's trade secrets and confidential information.  Second, to argue that the doctrine can only be applied in instances of actual disclosure is a *non sequitur* because

the whole point of the doctrine is that actual disclosure has not yet occurred – but that, under the circumstances, it is inevitable.

JANUS' Complaint treads right down the middle of that narrow path which this Court has carved for application of the inevitable disclosure doctrine: the employers are direct competitors who provide the same products or services, Kahnke's new position is nearly identical to his old one such that he cannot reasonably be expected to perform his duties without utilizing the trade secrets of JANUS and the trade secrets at issue are valuable to each employer.

In short, JANUS has set forth a cognizable claim in its Complaint, and Kahnke's motion to dismiss should therefore be denied in its entirety.

## APPLICABLE PLEADING STANDARD

A complaint survives a motion to dismiss where, as here, it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and plausibility requires only that the allegations in the complaint "raise a reasonable expectation that discovery will reveal evidence" in support of the claim.  Ashcroft v. Iqbal, 556 U.S. 662, 663-664 (2009) quoting, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  At this stage, a court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Rescuecom Corp. v. Google, Inc., 562 F.3d 123 (2d Cir. 2009).

As demonstrated herein, JANUS has asserted a claim for a permanent injunction based upon the inevitable disclosure doctrine, with sufficient factual detail such that discovery may reveal evidence in support of its claim.  For this reason alone, Kahnke's motion should be denied.

361293.6

**STATEMENT OF FACTS**

While Kahnke's Statement of Facts is sprinkled with loaded terms like Janus "assumes" and "speculates" (Kahnke Memorandum at 3), as a matter of law, this Court must take all of the allegations in the Complaint as true and not, at this stage, weigh the facts or determine whether they will be borne out in discovery.  The facts as set forth in the Complaint are as follows:

JANUS is a leading provider of luxury interior and exterior residential, contract, hospitality and site furnishings which are displayed and utilized in homes, gardens, hotels, office buildings, restaurants, many public and government buildings, parks, transportation centers, museums, libraries, hospitals, universities, shopping centers, food courts, theme parks, corporate lobbies and campuses, conference rooms, cafeterias and meeting spaces throughout the world. See Complaint at ¶ 6.  Kahnke began his employment with JANUS as a Sales Associate in JANUS' New York City showroom in February 2008, and was promoted to Sales Manager and relocated to Washington, D.C. in March 2011 to run JANUS' D.C. showroom.  Id. at ¶7.

Throughout his employment at JANUS, Kahnke had access to and gained intimate knowledge of trade secrets and confidential and proprietary business information belonging to JANUS, including but not limited to, directly developing and customizing for JANUS the Servoy system and other resource documents which detail key points about customers and competitors, financial, marketing and new product information, selling reports, order processing, product flow, inventory management, logistics, historical customer information and customized management systems, all of which were developed at the expense of JANUS.  Id. at ¶8.  Kahnke further supervised and trained JANUS employees in connection with their use of the customized

361293.6

Servoy system which managed and maintained much of JANUS' proprietary information.  Id., ¶9. [1]

The new product information, selling reports, historical customer information and customized management systems used by JANUS through the customized Servoy system constitute confidential information owned and protected by JANUS for the purpose of maintaining its competitive advantage in the marketplace.  Id., ¶10.  JANUS has expended substantial amounts of time, money and resources in creating its proprietary technology and processes for use in the industry.  Id, ¶11.

JANUS implements reasonable and appropriate security measures to protect its confidential information and trade secrets.  For example, JANUS requires its employees to sign a Confidentiality Proprietary Information and Non-Disclosure Agreement (the "NDA").  A copy of the NDA signed by Kahnke was annexed to the Complaint as Exhibit A.  Id., ¶12.

Kahnke resigned from his employment with JANUS on August 20, 2012, and advised that he intended to accept employment with a direct competitor, Dedon, Inc. ("Dedon").  Id., ¶13.

On August 20, 2012, Terry Clayton, the Senior Vice President of Sales at JANUS, called Kahnke to offer him an increase in salary and additional responsibilities in employee training and account management systems.  Id., ¶14.  On August 22, 2012, Kahnke declined Clayton's offer.  Clayton thereafter met with Kahnke personally in an attempt to again dissuade Kahnke from leaving the company, or to at least honor his contractual obligations as provided for in the NDA.  Id., ¶16.  Kahnke refused to reconsider leaving JANUS, and admitted that he was accepting a very similar position with Dedon.  Id., ¶17.  Kahnke revealed that Dedon offered him the

---

[1] Kahnke's assertion that the Servoy system is "publicly available" (Kahnke Memorandum at 4, n.5) is irrelevant, for the Complaint (which must be taken as true) alleges  in ¶19 that the system was "customized" for use at JANUS through Kahnke's efforts.  Moreover, without any affidavit or proof, Kahnke claims he is not working at Dedon in the same role as at JANUS and does not train Dedon employees on management systems.  Such unsupported factual allegations cannot be considered on this motion.

position of Regional Sales Director and part of his duties and responsibilities would be to develop an account management system and train sales staff, which duties are nearly identical to the work he performed at JANUS.  Id., ¶18.

Dedon is a high-end, global, luxury furniture design and manufacturing company which competes directly with JANUS for many of the same accounts and/or clients throughout the world.  Id., ¶18.  Dedon does not currently have any type of account management system such as the customized Servoy system which Kahnke helped design while he was employed by JANUS. Id., ¶19.

One of the reasons Dedon hired Kahnke is to exploit and appropriate the confidential and proprietary business information he learned from his work at JANUS and to task him with developing, installing and implementing the same kinds of business tools and management systems he learned from his work at JANUS and training Dedon's employees in the operation and logic of such tools and systems.  Id., ¶21.

By accepting employment with Dedon in a very similar role, it is inevitable that Kahnke will necessarily disclose and use JANUS' valuable confidential business information and trade secrets in his new position for the benefit of his new employer.  Id., ¶22.  Disclosure of JANUS' trade secrets to Dedon by Kahnke would be harmful to JANUS, and Dedon would obtain an unfair competitive advantage over JANUS as a result of such disclosure.  Id., ¶23.

Taking the above factual allegations as true, JANUS has set forth a cognizable claim for relief.

**ARGUMENT**

**I.**

**PLAINTIFF HAS PROPERLY SET FORTH A CLAIM FOR RELIEF**
**UNDER THE INEVITABLE DISCLOSURE DOCTRINE**

A.   **Plaintiff's Pleading is Sufficient**

The Complaint in this action sets forth all of the factual allegations necessary to state a claim for injunctive relief and damages.   The law protects an employer from an employee misappropriating  its trade secrets and valuable confidential business information, even where the former employer has yet to obtain proof of actual misappropriation.   Such a circumstance is precisely the situation where the doctrine of inevitable disclosure applies, provided that certain factual allegations are alleged for the court to consider.

In Earthweb, Inc. v. Schlack, 71 F. Supp.2d 299, 310 (S.D.N.Y. 1999), this Court set forth three specific factors necessary to determine whether to grant injunctive relief in connection with the inevitable disclosure doctrine.   A comparison of those three factors and the allegations in the Complaint reveal that JANUS has adequately alleged each of the necessary factors:

361293.6

| *Earthweb* Factors | Complaint Allegations |
|---|---|
| (1) the employers in question are direct competitors providing the same or very similar products or services; | ¶¶ 13 and 18 of the Complaint specifically allege that Dedon is a direct competitor of JANUS which competes for many of the same accounts. |
| (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; and | ¶¶ 18 and 22 of the Complaint specifically allege that Kahnke's "position of Regional Sales Director and part of his duties and responsibilities would be to develop an account management system and train sales staff, which duties are nearly identical to the work he performed at JANUS," and that "[b]y accepting employment with Dedon in a very similar role, it is inevitable that Kahnke will necessarily disclose and use JANUS' valuable confidential business information and trade secrets in his new position for the benefit of his new employer." |
| (3) the trade secrets at issue are highly valuable to both employers. | ¶ 8 of the Complaint specifically alleges that the customized Servoy system which JANUS developed details key points about customers and competitors, financial, marketing and new product information, selling reports, order processing, product flow, inventory management, logistics, historical customer information and customized management systems, all of which were developed at the expense of JANUS; and ¶¶ 18 and 19 specifically allege that Dedon does not have such a customized system and hired Kahnke to assist in the creation of such a system for its own use. |

The Court in <u>Int'l Business Machines, Corp. v. Papermaster</u>, 2008 WL 4974508, *7

(S.D.N.Y Nov. 21, 2008), likewise adopted similar factors:

> Factors that guide a court in making the determination that disclosure of trade secrets is inevitable include: "(1) the extent to which the new employer is a direct competitor of the former employer; (2) whether the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former

7

employer; (3) the extent to which the trade secrets at issue would be valuable to the new employer; and (4) the nature of the industry and its trade secrets."

(Citations omitted)

Because JANUS has adequately alleged all of the factors required for the Court to consider the inevitable disclosure doctrine, it is evident that JANUS has "'state[d] a claim to relief that is plausible on its face'" and the allegations "raise a reasonable expectation that discovery will reveal evidence" in support of the claim.  Ashcroft, 556 U.S. 663-664, quoting, Twombly, 550 U.S. 555.   Thus, as a matter of law, JANUS' Complaint readily survives Kahnke's motion to dismiss.

### B.  JANUS' Claim Is Governed By New York Law

JANUS' claim based on the inevitable disclosure doctrine sounds in tort, not breach of contract.  While the parties did execute a non-disclosure agreement ("NDA"), JANUS does not allege that Kahnke breached the agreement, but instead seeks to protect its trade secrets and confidential information by asserting a tort claim outside the purview of the NDA.

The choice of law provision contained in the NDA states that "[t]his Agreement shall be construed in accordance with and governed by the laws of the State of California."  However, Kahnke is mistaken when he asserts that JANUS' tort claim under the inevitable disclosure doctrine is subject to that clause (Kahnke Memorandum at 5).

In Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F.3d 325 (2d Cir. 2005), the Second Circuit held that contractual choice of law clauses do not encompass extra-contractual causes of action when the clause refers only to "this Agreement."   Id. at 334-335.  The Second Circuit explained that language which refers to "this Agreement" is simply not broad enough to encompass the relationship between the parties, including non-contractual

claims such as those sounding in tort.  Id.; see also, Ayco Co., L.P. v. Frisch, 795 F.Supp.2d 193 (N.D.N.Y. 2011) ("Although the Agreement's forum selection clause provides that the Court shall have jurisdiction over "any suit arising out of or relating to **this Agreement**," the choice of law provision states only that '[**t]his Agreement** shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to any conflict of laws provisions' … New York courts in this Circuit have refused to extend similarly worded clauses to govern **tort** claims as well as contract claims.") (Emphasis in original).

Here, JANUS' claim based on the inevitable disclosure doctrine sounds in tort, not contract, and therefore falls outside the scope of the choice of law clause contained in the NDA. Thus, as a matter of law, JANUS' claim is not governed by California law, and this Court must apply the law of New York, the forum where Kahnke is presently employed by Dedon and where any inevitable disclosure of JANUS' trade secrets will necessarily take place.

## C.  <u>JANUS Need Not Plead That Kahnke Already Disclosed a Trade Secret</u>

The crux of a claim based on the inevitable disclosure doctrine is to protect against the prospect and inevitability of the dissemination or use of a former employer's trade secrets by a former employee.  Accordingly, JANUS need not plead <u>actual</u> disclosure but only facts necessary to establish the three factors identified by the courts to state a claim for inevitable disclosure.  See Earthweb, 71 F. Supp.2d at 310 (doctrine may be applied "[a]bsent evidence of actual misappropriation"); Int'l Business Machines Corp. v. Papermaster, 2008 WL 497508, *7 (S.D.N.Y. Nov. 21, 2008) (doctrine may be applied "although there is no proof that Defendant has actually misappropriated trade secrets"); IKON Office Solutions, Inc. v. Usherwood Office Technology, Inc., 21 Misc.3d 1144(A), 875 N.Y.S.2d 820, 2008 WL 5206291, *7 (N.Y. Sup Ct, Albany Co. 2008) (doctrine may be applied "without proof of any actual misappropriation").

Kahnke confuses a claim for relief under the inevitable disclosure doctrine with a traditional claim for misappropriation of trade secrets (Kahnke Memorandum at 6-7). Specifically, contrary to Kahnke's assertion, to assert a claim under the inevitable disclosure doctrine, an employer need <u>not</u> plead that a former employee <u>actually</u> used trade secrets or confidential information in breach of an agreement, confidential relationship or duty – if the trade secret were already disclosed or used, there would be no need to invoke the inevitable disclosure doctrine for a standard misappropriation claim would suffice.  Thus, the cases cited by Kahnke for his contention that <u>actual use</u> must be alleged to state a claim (Kahnke Memorandum at 6) are all distinguishable because each involves a standard misappropriation claim and <u>none</u> of them involve an inevitable disclosure claim.

The inevitable disclosure doctrine is implicated "where an employee's new job duties inevitably will lead to the use of his former employer's trade secrets" and is asserted in situations, like this, where the employer is without proof of actual misappropriation.  See <u>e.g.</u>, <u>IKON Office Solutions, Inc. v. Usherwood Office Technology, Inc.</u>, 21 Misc.3d 1144(A), 875 N.Y.S.2d 820, 2008 WL 5206291, *7 (N.Y. Sup Ct Albany Co. 2008) <u>citing</u>, <u>PepsiCo, Inc. v. Redmond</u>, 54 F.3d 1262, 1268-70 (7th Cir. 1995).

To plead a claim for the inevitable disclosure doctrine, the employer need only allege that "the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer."  <u>Earthweb</u>, 71 F.Supp.2d at 310.  JANUS has fulfilled that pleading requirement.

Accordingly, Kahnke's assertion that the Complaint in this action should be dismissed because JANUS has not alleged actual disclosure is wholly misplaced and devoid of legal merit.

## II.
## THE INEVITABLE DISCLOSURE DOCTRINE
## <u>IS RECOGNIZED IN NEW YORK</u>

The New York courts have both recognized and applied the inevitable disclosure doctrine to protect an employer against a former employee disclosing its trade secrets or confidential information.  While JANUS recognizes there is a narrow path to tread in asserting the doctrine, the allegations of JANUS' Complaint fall squarely down the middle of that path.  The issue of whether the inevitable disclosure doctrine should be applied sparingly or generously is not properly before the Court at this juncture, as a determination of whether this case fits within the ambit of the doctrine will depend on the factual record developed through discovery, and may not be decided on the pleading.

### A.  <u>Application of the Doctrine in New York</u>

The inevitable disclosure doctrine was indisputably recognized and applied in New York in <u>Int'l Business Machines Corp. v. Papermaster</u>, 2008 WL 4974508, at *7 (S.D.N.Y. Nov. 21, 2008), <u>Global Telesystems, Inc. v. KPNQwest, N.V.</u>, 151 F.Supp.2d 478, 482 (S.D.N.Y. 2001) and <u>Doubleclick, Inc. v. Henderson</u>, 1997 WL 731413, at *5 (Sup. Ct. N.Y. Co. Nov. 7, 1997). Thus, Kahnke's assertion that "New York courts do not recognize a claim for 'inevitable disclosure' of trade secrets" (Kahnke Memorandum at 7) is simply incorrect.   In fact, <u>Doubleclick</u> is a New York State court case in which the doctrine was applied, and that case was even discussed by this Court in its <u>Earthweb</u> decision.

Furthermore, while Kahnke asserts that the doctrine has not yet been adopted by New York courts (Kahnke Memorandum at 7), <u>he cites and acknowledges two cases</u> where the doctrine was applied by those very courts (Kahnke Memorandum at 9).  As such, Kahnke's

361293.6

position that the inevitable disclosure doctrine is not recognized in New York is disingenuous at best.

**B.   The Doctrine May Be Applied To A Permanent Injunction**

Kahnke's contention that the Complaint should be dismissed because the inevitable disclosure doctrine has been considered only in connection with applications for a preliminary injunction is specious.   Just because the reported decisions discuss the inevitable disclosure doctrine in addressing motions for a preliminary injunction does not mean that the doctrine is limited to that context.

In fact, Kahnke cannot cite to a single case where a claim for the inevitable disclosure doctrine was rejected at the pleading stage by a motion to dismiss.   Kahnke is demanding that this Court be the very first in New York to dismiss an inevitable disclosure claim at the pleading stage and deny the plaintiff an opportunity to pursue discovery.

It is well established that "a plaintiff may obtain a permanent injunction if it shows (1) 'actual success on the merits' and (2) 'irreparable harm.'"   See Phillip Morris USA, Inc. v. A&V Minimarket, Inc., 592 F.Supp.2d 669, 675 (S.D.N.Y. 2009), citing, Prot. One Alarm Monitoring, Inc. v. Executive Prot. One Sec. Serv., LLC., 553 F.Supp.2d 201, 205 (E.D.N.Y.2008) and Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F.Supp.2d 284, 290 (S.D.N.Y.2003).

Only through discovery and the development of a factual record will JANUS be able to prove its allegations that "(1) the employers in question are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; and (3) the trade secrets at issue are highly valuable to both employers." Earthweb, 71 F. Supp.2d at 310.  Inasmuch as JANUS has

sufficiently alleged each of the elements necessary for it to state a claim, the Complaint cannot be dismissed as a matter of law.

While the inevitable disclosure doctrine has been applied in the context of assessing irreparable harm in connection with an application for a preliminary injunction, irreparable harm is also an element of a permanent injunction, relief which JANUS has asserted in its Complaint. Therefore, the inevitable disclosure doctrine will need to be considered by the Court in assessing JANUS' right to permanent injunctive relief – whether that evaluation is performed at the summary judgment stage or after trial, it clearly should not be undertaken at the pleading stage.

Upon proving the three factors set forth in Earthweb and showing that JANUS will be irreparably harmed if Kahnke is permitted to remain in his current position at Dedon, JANUS will succeed on the merits and be entitled to permanently enjoin Kahnke from working at Dedon.

The decisions cited by Kahnke from the Northern District (Kahnke Memorandum at 8) are inapposite.  In both Colonize.Com, Inc. v. Perlow,  2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) and Boston Laser, Inc. v. Qinxin Zu, 2007 WL 2973663 (N.D.N.Y. Sept. 21, 2007), the Court recognized that the inevitable disclosure doctrine may apply in some cases, but held that it was insufficient to alone satisfy the high burden of proof required to obtain extraordinary relief in the form of a preliminary injunction.  At this time, JANUS does not seek the drastic remedy of a preliminary injunction.

Accordingly, the Complaint should not be dismissed at this early stage of the litigation and discovery should proceed so that JANUS can develop the record in order to prove each of its factual allegations necessary for a permanent injunction.

C.  **The Doctrine Protects Against Inevitable Tortious Conduct**

The inevitable disclosure doctrine protects an employer against the tortious conduct of a former employee by preventing the individual from disclosing trade secrets even in the absence of evidence of actual misappropriation or a non-compete agreement.   In an attempt to marginalize the inevitable disclosure doctrine, Kahnke misconstrues this Court's decision in Earthweb.   Contrary to Kahnke's contention, this Court and other courts recognize the necessity for protecting an employer's interest even where the parties have not executed a restrictive covenant.

In the seminal case of PepsiCo, Inc. v. Redmond, 54 F.3d 1262, supra, the Seventh Circuit enjoined a former employee of PepsiCo from working for a direct competitor.   In granting the injunction, the Court found that a former employee would not be able to perform his duties for his new employer without utilizing PepsiCo's trade secrets or confidential information. While the parties in the PepsiCo case had entered into a confidentiality agreement, like here, they did not enter into a non-compete agreement, also like here, and yet the Seventh Circuit affirmed an injunction against the former employee based largely upon the inevitable disclosure doctrine.

In Earthweb, this Court specifically stated that "in post-employment disputes that do not involve trade secrets or tortious conduct on the part of the employee, restrictive covenants may not be implied" (emphasis added), but the doctrine can be applied after the Court has had an opportunity to consider the three factors identified by the Court and discussed above.  71 F.Supp. at 310.  Thus, this Court recognized that where the necessary factors are present, the inevitable disclosure doctrine can be applied to protect an employer's trade secrets.  This Court cautioned, however, that where the parties negotiated for a restrictive covenant, as they did in Earthweb, in such a situation the Court would decline to "re-write the parties' employment agreement under

the rubric of inevitable disclosure and thereby permit Earthweb to broaden the sweep of its restrictive covenant." Id. at 311.

Like the facts in PepsiCo, while JANUS did not require Kahnke to execute a non-compete agreement as a condition of his employment, it took reasonable steps to protect its trade secrets, including having Kahnke execute a confidentiality agreement. As in Earthweb, this case is a post-employment dispute which involves trade secrets and tortious conduct. As such, JANUS should not be precluded from seeking injunctive relief against Kahnke simply because the parties did not enter into a non-compete agreement. To the contrary, the inevitable disclosure doctrine is properly stated once JANUS alleges each of the three necessary factors.

In short, Kahnke has completely misconstrued this Court's discussion of the inevitable disclosure doctrine as set forth in Earthweb – the parties here did not enter into a non-compete so JANUS is not asking the Court to "re-write" or otherwise expand upon what the parties negotiated. Kahnke's motion turns a blind eye to instances where courts have utilized the inevitable disclosure doctrine even in the absence of a non-compete agreement. JANUS should therefore be permitted to proceed with its action so that it can prove the factual allegations set forth in the Complaint.

15

## CONCLUSION

For all of the foregoing reasons and principles of law, Kahnke's motion to dismiss should be denied in all respects, together with such other, further and different relief as to the Court seems just and proper.

Dated: New York, New York
        December 14, 2012

                                    **KANE KESSLER, P.C.**


                                    By: /s/ Jeffrey H. Daichman
                                        Jeffrey H. Daichman
                                        Gerard Schiano-Strain
                                        *Attorneys for Plaintiff*
                                        1350 Avenue of the Americas
                                        New York, New York 10019
                                        (212) 541-6222

16

361293.6