```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/29/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JANUS ET CIE,

                Plaintiff,

      -against-

ANDREW KAHNKE,

                Defendant.
------------------------------------X

12 Civ. 7201 (WHP)

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

       Plaintiff Janus et Cie, a California corporation, brings this diversity action for inevitable disclosure of trade secrets against its former employee, Defendant Andrew Kahnke, a citizen of New York. Kahnke moves to dismiss the action pursuant to Rule 12(b)(6). For the following reasons, Kahnke's motion is granted.

## BACKGROUND

       In February 2008, Kahnke was employed as a sales associate by Janus, a provider of high-end residential and commercial furnishings. (Compl. ¶¶ 6-7.) On February 22, 2008, Kahnke and Janus executed a non-disclosure agreement that prohibited Kahnke from sharing Janus' "confidential information," defined as "all information that has actual or potential economic value to [Janus]." (Confidentiality Proprietary Information and Non-Disclosure Agreement, dated Feb. 22, 2008 at ¶ 1.) Kahnke did not execute any non-compete agreement with Janus. In March 2011, Kahnke was promoted to sales manager and relocated from Janus' New York City showroom to its Washington D.C. showroom. (Compl. at ¶ 7.) As part of his

responsibilities, Kahnke "develop[ed] and customiz[ed]" Janus' account management system and other "resource documents" which "detail key points about customers and competitors, financial, marketing and new production information, selling reports, order processing, product flow, inventory management, logistics, historical customer information and customized management systems." (Compl. ¶ 8.) Kahnke also trained and supervised other Janus employees in the use of the account management system. (Compl. ¶ 9.)

On August 20, 2012, Kahnke notified Janus that he had accepted "a very similar position" with Dedon, Inc., a direct competitor of Janus, back in New York. (Compl. ¶¶ 13, 17.) According to the Complaint, Dedon hired Kahnke hoping to exploit the information he learned at Janus in order to develop its own customized account management system. (Compl. ¶¶ 18, 20-21.) In an attempt to prevent Kahnke from going to work for Dedon, Janus offered him a raise and additional responsibilities. (Compl. ¶ 14.) But Kahnke declined that offer and began his employment with Dedon in August 2012. (Compl. ¶ 16.)

Having failed to retain Kahnke, Janus now brings this action for inevitable disclosure of trade secrets, seeking a permanent injunction barring him from disclosing any of Janus' trade secrets or confidential information and from working for Dedon in any area where Janus and Dedon are direct competitors. Janus does not allege that Kahnke breached the non-disclosure agreement. Nor does Janus assert any facts indicating that Kahnke actually misappropriated or disclosed any of Janus' trade secrets. Rather, Janus seeks an injunction based on the theory that "Kahnke's position with Dedon is so similar . . . that he cannot possibly perform the functions of his position . . . without using and/or disclosing confidential information and trade secrets belonging to Janus." (Compl. ¶ 28.)

# DISCUSSION

I. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal punctuation omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

II. Inevitable Disclosure of Trade Secrets

There is no dispute that New York law applies to this diversity action. New York law does not appear to recognize inevitable disclosure of trade secrets as a stand-alone cause of action. Rather, state and federal case law refer to the doctrine of inevitable disclosure exclusively in the context of preliminary injunctions. There, the doctrine has been used to support the required showing of irreparable harm where there is a substantial risk that a

defendant will disclose trade secrets to a competing employer. But courts have resorted to the doctrine only in instances where there is evidence of the actual misappropriation of trade secrets, or where the plaintiff asserts a claim for breach of a non-compete agreement. See, e.g., Lumex, Inc. v. Highsmith, 919 F. Supp. 624 (E.D.N.Y. 1996) (recognizing doctrine in action to enforce non-compete agreement); Int'l Bus. Machs. Corp. v. Papermaster, No. 08 Civ. 9078 (KMK), 2008 WL 4974508, at *7 (S.D.N.Y. Nov. 21, 2008) (in analysis of whether irreparable harm can be established without actual misappropriation of trade secrets, "the existence of the Noncompetition Agreement is highly relevant"); DoubleClick Inc. v. Henderson, No. 116914/97, 1997 WL 731413, at *4 (N.Y. Sup. Ct. Nov. 7, 1997) (granting injunction where documents found on defendants' computers constituted "substantial evidence . . . that defendants misappropriated [plaintiff's] trade secret information").

Here, Janus makes the extraordinary request that this Court be the first to recognize the inevitable disclosure of trade secrets as a stand-alone claim in a complaint bereft of any allegations that Kahnke misappropriated trade secrets or breached a non-compete agreement. In essence, Janus asks this Court to allow a lawsuit to proceed to discovery when the Complaint alleges no wrongdoing by Kahnke. But the end game is a permanent injunction that would greatly expand the reaches of a restricted doctrine heavily disfavored under New York law.

Fourteen years ago, in EarthWeb, Inc. v. Schlack, 71 F. Supp. 2d 299 (S.D.N.Y. 1999), this Court explored the parameters of the inevitable disclosure doctrine under New York law. There, EarthWeb sought to use inevitable disclosure of trade secrets as a basis to enjoin Schlack preliminarily from working for a competitor even though the parties' non-compete agreement did not prohibit it. Critically, like Janus here, EarthWeb "had no evidence

that Schlack had copied or otherwise absconded with documents allegedly containing trade secrets." EarthWeb, 71 F. Supp. 2d at 308. In such cases, "the court is essentially asked to bind the employee to an implied-in-fact restrictive covenant based on a finding of inevitable disclosure. This runs counter to New York's strong public policy against such agreements and circumvents the strict judicial scrutiny they have traditionally required." EarthWeb, 71 F. Supp. 2d at 310. This Court refused to "re-write the parties' employment agreement under the rubric of inevitable disclosure," holding that the doctrine "treads an exceedingly narrow path through judicially disfavored territory. Absent evidence of actual misappropriation by an employee, the doctrine should be applied in only the rarest of cases." EarthWeb, 71 F. Supp. 2d at 310-11.

New York courts are in accord with EarthWeb when there is a confidentiality agreement as opposed to a non-compete agreement. In Marietta Corp. v. Fairhurst, 754 N.Y.S.2d 62 (3d Dep't 2003), the parties had negotiated a non-disclosure agreement, but not a non-compete agreement. In this context, the court determined that "the doctrine of inevitable disclosure is disfavored as well, '[a]bsent evidence of actual misappropriation by an employee.'" Marietta, 754 N.Y.S.2d at 65-66 (citing EarthWeb, 71 F. Supp. 2d at 310); see also Colonize.Com, Inc. v. Perlow, No. 03 Civ. 466, 2003 WL 24256576, at *6 (N.D.N.Y. Oct. 23, 2003) ("New York courts have used the doctrine very sparingly to grant injunctive relief only in circumstances where other evidence of theft of trade secrets exists.").

Further, as in Marietta, Janus alleges no breach of a "valid and enforceable confidentiality agreement which clearly anticipated that [Kahnke] may change his employment during its duration after acquiring plaintiff's confidential information." Marietta, 754 N.Y.S.2d at 66. And the parties' non-disclosure agreement mandates that any breach be governed by

California law, which does not recognize inevitable disclosure of trade secrets as a valid cause of action. Pellerin v. Honeywell Int'l, Inc., No. 11 Civ. 1278, 2012 WL 2781346, at *3 (S.D. Cal. July 6, 2012) ("California does not recognize the 'inevitable disclosure doctrine[.]'"). In "asserting the doctrine of inevitable disclosure as an independent basis for relief," Janus is clearly trying to "make an end-run around the [confidentiality] agreement." Marietta, 754 N.Y.S.2d at 66 (citing EarthWeb, 71 F. Supp. 2d at 311). Marietta explicitly cautions that this "should not be permitted" in "those rare instances where such doctrine is applied." Marietta, 754 N.Y.S.2d at 66.

Janus contends that its Complaint survives a Rule 12(b)(6) motion merely because it alleges certain factors that courts "consider in weighing the appropriateness of granting injunctive relief" based on the inevitable disclosure doctrine; namely that "(1) the employers in question are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job responsibilities without utilizing the trade secrets of his former employer; and (3) the trade secrets at issue are highly valuable to both employers." EarthWeb, 71 F. Supp. 2d at 310. But this argument overlooks the fact that the doctrine is "fraught with hazards" and does not persuade this Court that it has threaded the "exceedingly narrow path through judicially disfavored territory[.]" EarthWeb, 71 F. Supp. 2d at 310 (noting the risk that "the parties' confidentiality agreement may be wielded as a restrictive covenant" when "[s]uch constraints should be the product of open negotiation."). Nor does Janus address why this disfavored doctrine should be recognized as a stand-alone claim outside the preliminary injunction context, where the irreparable harm standard safeguards against speculative claims.

In any event, Janus' assertion that the complaint navigates through "judicially disfavored territory" is conclusory. And even if a claim for inevitable disclosure can exist, Janus' claim that Kahnke was exposed to confidential information that his competitor would like to know "is insufficient to support the theory that [Kahnke] has used or threatened to use any of the Company's trade secrets. Absent any wrongdoing that would constitute a breach under the [confidentiality] agreement, mere knowledge of the intricacies of a business is simply not enough." Colonize.Com, 2003 WL 24256576, at *6. To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Discovery here would be a fishing expedition through a competitor's files. Ironically, Janus argues that it should be permitted to obtain Dedon's confidential information in order to determine whether it can make a case to protect its own. This Court refuses to countenance the imposition of an unlimited, unbargained-for restrictive covenant on Mr. Kahnke based on threadbare allegations. Such a result is against "well entrenched state public policy considerations disfavor[ing] such agreements." Marietta, 754 N.Y.S.2d at 65 (citing Reed, Roberts Assocs., Inc. v. Strauman, 40 N.Y.2d 303, 307 (1976)).

## CONCLUSION

For the foregoing reasons, Andrew Kahnke's motion to dismiss Janus et Cie's Complaint is granted. The Clerk of the Court is directed to terminate all pending motions and mark this case closed.

Dated: August 29, 2013
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Gerard Schiano-Strain, Esq.
Jeffrey H. Daichman, Esq.
Kane Kessler, P.C.
1350 Avenue of the Americas, 26th Floor
New York, NY 10019

Stephen S Smith, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of The Stars, 21st Floor
Los Angeles, CA 90067
*Counsel for Plaintiff*

Robert Mark Keenan, Esq.
Kathleen F. Donovan, Esq.
Dennis Joseph Artese, Jr, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
*Counsel for Defendant*